# Composite Exhibit B

# NEW YORK SUPREME COURT
# KINGS COUNTY

|  |  |
|---|---|
| MICHAEL RING, individually and on behalf of all others similarly situated, | **SUMMONS** |
| Plaintiff, | Index No. |
| -against- | Purchased on        July 15, 2025 |
| GOLI NUTRITION INC., | |
| Defendant. | |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

July 15, 2025

/s/Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Plaintiff Ring designates Kings County as place of trial. The basis of venue is:

☒    Plaintiff Ring's residence, 78 8th Ave, Brooklyn, NY 11215

☐    Where a substantial part of the events or omissions giving rise to the claim occurred

☐    Other

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 3 of 90 PageID #: 13

# NEW YORK SUPREME COURT
# KINGS COUNTY

MICHAEL RING, individually and on behalf of all others similarly situated,

                    Plaintiff,

        - against -

GOLI NUTRITION INC.,

                    Defendant.

Index No.

Class Action Complaint

Jury Trial Demanded

Michael Ring ("Plaintiff") through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Until the late nineteenth century, Americans filled their own bottles and sacks, in bulk, at the local dry goods and general store.

2.    The frauds encountered related primarily to weights and measures, such as whether a scale was zeroed out, or if the cashier kept his "thumb on the scale."

3.    Increasing urbanization, new technologies, and societal changes, resulted in "Packages replacing the salesman."

4.    When pitted against unscrupulous and distant canners and packers, skilled in exploiting "extrinsic cues such as visual information,"[1] the consumer was

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016):

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 4 of 90 PageID #: 14

no match.

5.    Research in marketing and psychology confirmed almost ninety percent of the public considered a container's size a key factor in making their decisions.

6.    The result was oversized and misshaped containers, filled with air, and smaller quantities of the feed, corn, and oats, than expected.

7.    The Department of Weights and Measures then required commodities to disclose "the quantity of the contents," in term of weight, measure, or count.

8.    This was little use, because the hurried consumer, lacking literacy, was unaware of the specific gravity, density, and/or potency, of what they were buying.

9.    Later, the Legislature required "Fair Packaging and Labeling of Containers," to prevent "false indication of or respecting the number, quantity, weight or measure" of consumer commodities. AGM §§ 193, 194, and 1 N.Y.C.R.R. § 259.1(a).[2]

---

219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); Gupta K, O. et al., Package Downsizing: Is it Ethical? 21 AI & Society 239-250 (2007).

[2] Article 16, Weights and Measures, AGM § 176 et seq., Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 et seq.; 1

2

10.   To appeal to consumers seeking melatonin, and/or a desire for value, by obtaining more of something, not less, Goli Nutrition Inc. ("Defendant") manufactures, labels, markets, packages, and/or distributes "Dreamy Sleep Gummies," having "5mg Melatonin per serving," in bottles of "60 Gummies," under the Goli brand ("Product").



---

N.Y.C.R.R. Part 221 ("Commodities"); Title 1, Department of Agriculture and Markets, Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), including 1 N.Y.C.R.R. § 259.1(a).

3

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 6 of 90 PageID #: 16

11.    Despite expecting each of the sixty gummies would deliver the promised "5mg Melatonin per serving," the Product is "misbranded,"[3] because the small print "Supplement Facts," on a non-visible side of the bottle, shows the "Serving Size [is] 2 Gummies," confirmed by the "Suggested Use," to "Take "Take 2 gummies at bedtime," which means the "Servings Per Container [is only] 30," not 60.



12.    The result of this "false indication of or respecting the number, quantity,

---

[3] "Misbranded" is the statutory term for labeling that is false and/or misleading. "Adulterated" is the statutory term meaning to "render (something) poorer in quality by adding another substance, typically an inferior one."

weight or measure" is that purchasers receive one-half of the melatonin they expect.

13. This practice was recently observed by Edgar Dworsky, aka "MrConsumer."

14. As part of his efforts "to help educate the public about the catches or 'gotchas' in disclaimers," he warned his readers, "Don't Let the Pill Bottle Quantity Fool You."[4]

## Don't Let the Pill Bottle Quantity Fool You

January 15, 2024 by Edgar (aka MrConsumer)

15. Like many and/or most purchasers, "When [they] see the number of pills [or gummies] in a bottle, along with the strength, [they] reasonably assume that is what will be inside. So [for example,] a bottle of 100 aspirin that says 325 milligrams should be just that."

16. The Product is "misbranded," because despite the front label "declaration of [its] net quantity of contents…expressed in the terms of [] numerical count," "60 Gummies," this fails to "give accurate information regarding [its] net quantity of contents," because instead of sixty servings per container, each having 5 mg of melatonin, purchasers get one-half of this quantity, thirty. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1);.

---

[4] Edgar (aka MrConsumer), Don't Let the Pill Bottle Quantity Fool You, Jan. 15, 2024, MousePrint.org.

5

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 8 of 90 PageID #: 18

17. As Mr. Consumer said, "Shouldn't the strength of the medication displayed on the front of the bottle be what you get in each pill, capsule, or gummy inside?"

18. This was why Dworsky, and his many readers, found it insufficient to merely "add the words 'per serving' in small print," to the front label, like here.

Before                    After



19. Dworsky knew that "per serving" would not "put prospective purchasers on sufficient notice that you needed to take [multiple gummies] to get the stated amount of [the promised vitamins or supplement]."

20. Promoting "5mg Melatonin per serving," and/or "60 Gummies," "[impedes] value comparisons by consumers," who will not expect (i) the "Serving

6

Size [is] 2 Gummies" and/or (ii) the need to take two gummies to get this much melatonin. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1).

21. Since "the declaration of quantity of contents by numerical count," "60 Gummies," does not give adequate information as to the true quantity, in terms of the total amount of melatonin, the front label was required to combine this with other information, such as disclosures (1) that two gummies were needed to deliver 5 mg of melatonin, and/or (2) the container provided thirty servings. 1 N.Y.C.R.R. § 221.5(g).

22. Since the servings per container of 30 is not the same as the "net quantity of contents," "60 Gummies," it is required to be accompanied by, for example, "Serving Size 2 Gummies," "30-day supply," and/or "Take 2 Gummies." 1 N.Y.C.R.R. § 221.5(g).

23. As the front label "bears a representation as to the number of servings" even without the specific word, "servings," through the statements, "5mg Melatonin per serving," and "60 Gummies," conveying consumers will get sixty servings, each with five milligrams of melatonin, it was required to, and/or should have, disclosed, "in immediate conjunction therewith…a statement of the net quantity (in terms of [] numerical count) of each such serving," i.e., "2 Gummies Per Serving," and/or "Take 2 Gummies," to prevent them from being misled. 1 N.Y.C.R.R. § 221.5(g).

24. The Product is "misbranded," because labeling from competitors shows

7

INDEX NO. 523551/2025
RECEIVED NYSCEF: 07/15/2025

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 10 of 90 PageID #: 20

that statements, such as "5 mg Melatonin per serving," and "60 Gummies," are not

consistent with "general consumer usage and trade custom with respect to the terms

used in expressing a declaration of quantity of [gummy vitamins]." AGM § 201(1),

and 1 N.Y.C.R.R. § 221.5(f).

25.   This is confirmed by how competitor brands of supplements, like GNC,

inform purchasers of how much melatonin they are really getting, by disclosing on

the front label, the quantity of the nutrient, "5 mg," which is "Per 2 Gummies," and

that the "120 Gummies" in the container are a "60-Day Supply."



26.   Other melatonin supplements, from Nature Made, prominently inform

purchasers that their gummies provide "10 mg per 2 gummies," in containers of "70

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 11 of 90 PageID #: 21

Gummies," which provides "40 Servings," equivalent to disclosing three gummies are equal to one serving.



27. The Product is "misbranded" because even if statements, such as "5 mg per serving," and "60 Gummies," may be consistent with any "general consumer usage and trade custom with respect to the terms used in expressing a declaration of quantity of [gummies]," this does not give accurate and adequate information as to the true quantity, and/or amount, of the gummies, and/or the quantity of melatonin. AGM § 201(1), and 1 N.Y.C.R.R. § 221.5(f)

28.   This is why the Department of Agriculture and Markets ("Ag&Mkts") considers it "deceptive" to not include the quantity per serving, because there is a label representation as to the quantity of melatonin, through "5 mg per serving," and "60 Gummies," even though this is not explicit, but implied. 1 N.Y.C.R.R. § 221.5.

29.   The Product is "misbranded," because even though the front label contains "an accurate statement of the quantity of the contents in terms of…numerical count," "60 Gummies," this is not "fully informative," because it does not give adequate information as to the true quantity, or "measure," requiring a disclosure that two gummies are needed to deliver  the five milligrams of melatonin. AGM § 193, and 1 N.Y.C.R.R. § 221.5(g) (requiring "Combination declaration," including count, weight, measure, and/or size, unless a declaration of one of these alone "is fully informative.")

30.   The Product is "misbranded," because even though "Serving Size 2 Gummies" and/or "Take 2 gummies," were required on the front label, this only is disclosed in the fine print, on a non-visible side, "not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." AGM § 201(6).

31.   As a result of the false and misleading representations and/or omissions,

the Product is sold at a premium price, approximately $14.99.

32.   This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

33.   This will, and/or can be, determined through methods including conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic pricing, regression, and/or other similar methods, which evaluate a product's attributes, and/or features.

34.   By determining consumers' willingness to pay for products, with and/or without the challenged claims, attributes, representations, and/or omissions, the value of the challenged claims, representations, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

35.   Plaintiff Ring is a citizen of New York.

36.   Plaintiff Ring is a resident of Kings County, New York.

37.   The Court has jurisdiction over Defendant, because it transacts business within New York, and sells the Product to consumers within New York, through stores, in this State, to citizens of this State.

## VENUE

38.   Venue is in this Court, because Plaintiff Ring's residence is in Kings County.

## PARTIES

39. Plaintiff Ring is a consumer, not a merchant or re-seller.

40. Plaintiff Ring is a citizen of New York.

41. Plaintiff Ring is a resident of Kings County, New York.

42. Defendant Goli Nutrition Inc. is a Delaware corporation, with a principal place of business in California.

43. Plaintiff is like many or most consumers, and prefers to get more of most things, i.e., gummies, melatonin, etc., than less, for their money.

44. Plaintiff is like many or most consumers, and looks to, and/or cannot avoid viewing, the front label of consumer commodities and/or nutritional products, to see what they are buying, and/or to learn basic information about them, such as how much it contains, how long it will last at the recommended dosage, and/or what it contains, with respect to the substance they are purchasing.

45. Plaintiff is like many or most consumers of supplements, and/or vitamins, and thinks in terms of how many pieces, chewables, soft chews, chewable tablets, capsules, gummies, bites, etc., are needed, to deliver the promised amount, of whatever is promoted on the front label.

46. Plaintiff is like most or many consumers, and is accustomed to the front label of packaging telling him how much a product contains, in terms that would be clearly understood.

Case 1:25-cv-06247     Document 1-2     Filed 11/10/25     Page 15 of 90 PageID #: 25

47.   Plaintiff expected that because the Product's front label promoted a certain number of gummies, sixty, and/or promised a specific amount or quantity of a substance, five milligrams of melatonin, per serving, this meant each of the gummies would deliver the identified quantity and/or amount, of that substance.

48.   Plaintiff read, was exposed to, relied on, and/or was caused to pay more money as a result of, the representations and/or omissions, including, "5 mg Melatonin per serving," and/or "60 Gummies" to mean each of the gummies would deliver five milligrams of melatonin.

49.   Plaintiff bought the Product, with the labeling and packaging identified here, at or around the above-referenced price.

50.   Plaintiff purchased the Product, between August 2022 and June 2025, at stores, in New York.

51.   Plaintiff paid more for the Product than he would have, had he known (i) it required more than one gummy to obtain the 5 mg of melatonin, promised on the front label, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings, as he would have paid less.

52.   The Product was not "worthless" to Plaintiff, but worth less, than what Plaintiff paid, and he would not have paid as much, absent Defendant's false and misleading statements, and/or omissions.

13

53. Plaintiff obtained value from the Product, because it was a source of melatonin, but seeks the cost difference between the Product, as presented, and as delivered.

54. The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based conjoint analysis, choice-based ranking, hedonic pricing, or other similar methods, impacted Plaintiff's purchasing choice, compared to similar products lacking its features and/or attributes.

## CLASS ALLEGATIONS

55. Plaintiff is a consumer, not a re-seller or merchant.

56. Plaintiff seeks to represent other consumers, in the class identified below, against a big business:

> Only citizens of New York, who purchased the Product, for personal consumption and/or use, in New York, during the statutes of limitations.

57. Plaintiff's claims are based upon New York's General Business Law ("GBL") §§ 349 and 350, passed by the legislature, to protect the New York public, and unsophisticated New York consumers, against large and sophisticated businesses.

58. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii)

governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) any person that timely and properly excludes himself or herself from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used or consumed the Product outside New York, (viii) persons who may be citizens of more than one state, and (ix) any persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

59.     Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and if Plaintiff and class members are entitled to damages.

60.     Plaintiff's claims and basis for relief are typical to other members, because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

61.     Plaintiff is an adequate representative, because his interests do not conflict with other members.

62.     No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

63.     Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

64.     The class is sufficiently numerous, because the Product is sold

15

Case 1:25-cv-06247     Document 1-2     Filed 11/10/25     Page 18 of 90 PageID #: 28

throughout the State, with the representations, omissions, packaging, and/or labeling identified here, in this State, to citizens of this State.

65.  Plaintiff does not seek any penalty as a measure of damages.

66.  To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of the proposed class.

67.  Plaintiff's Counsel is competent and experienced in consumer class actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

68.  To the extent required, this section incorporates by reference other paragraphs, as necessary.

69.  The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

70.  This includes making New York's consumer protection and enforcement consistent with established policies of other jurisdictions relating to consumer protection.

71.  The GBL considers false advertising, unfair acts, and deceptive practices, in the sale of consumer goods, to be unlawful.

72.  Violations of the GBL can be based on (1) other laws and standards

16

related or connected to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception in other jurisdictions, and/or (6) standards of unfairness and deception set forth and interpreted by other agencies, political organizations, entities, tribunals, and/or bodies, relating to regulatory provisions.

73. Defendant's false and deceptive representations and omissions, with respect to the Product's contents, origins, nutrient values, servings, ingredients, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

74. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, which was unfair and/or deceptive to consumers.

75. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against the public.

76. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including,

17

"5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, contrary to statutes and/or regulations, which prohibit consumer deception by companies in the labeling of commodities and/or nutritional products.

77. Plaintiff paid more for the Product, and would not have paid as much, if he knew (i) it required more than one gummy to obtain the 5 mg of melatonin, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings.

78. Plaintiff seeks to recover for economic injury and/or loss he sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

79. Plaintiff may produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-based ranking, and/or other advanced methodologies.

80. This means individual damages will be based on the value attributed to the challenged claims, practices, and/or omissions, a percentage of the total price paid, instead of the Product's total price.

18

81.   This is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

82.   This difference is typically between five ($0.05) and sixty cents ($0.60) per unit, a small fraction or percentage of the total price.

83.   Plaintiff was caused to pay more than he would have paid for the Product, based on the identified misrepresentations and/or omissions.

84.   Plaintiff suffered benefit of the bargain damages.

85.   Plaintiff paid for sixty servings of melatonin, each with five milligrams of melatonin, but received half of this amount.

86.   As a result of Defendant's misrepresentations and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks:

1.   To declare this a proper class action, certifying Plaintiff as representative, and the undersigned as Counsel for the Class; and

2.   Actual damages, but neither (1) a penalty, nor minimum measure of recovery

19

created or imposed by statute, which may be prohibited, (2) full value

damages, nor (3) punitive damages.

July 15, 2025

Respectfully submitted,

/s/  Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

Notice of Lead Counsel Designation

Lead Counsel for Plaintiff

Spencer Sheehan

Sheehan & Associates P.C.

Counsel for Plaintiff

20

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 23 of 90 PageID #: 33

### Certificate of Service

I certify, that on July 15, 2025, I served and/or transmitted the foregoing, by the

method below to the persons or entities indicated, at their last known address of

record (blank where not applicable).

|  | Electronic | Email | First-Class Mail | Fax |
|---|---|---|---|---|
| Defendant | ☐ | ☐ | ☐ | ☐ |
| Plaintiff | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

| | |
|---|---|
| MICHAEL RING, individually and on behalf of all others similarly situated, | Index No. 523551/2025 |
| Plaintiff, | |
| - against - | Affirmation of Compliance |
| GOLI NUTRITION INC., | |
| Defendant. | |

Pursuant to CPLR § R2106, I affirm:

1.    I am an attorney with Sheehan & Associates P.C., counsel for Michael Ring ("Plaintiff").

2.    I submit this Affirmation of Compliance pursuant to New York State Business Corporation Law ("BCL") § 307, which provides the requirements for "Service of process on [an] unauthorized foreign corporation."

3.    According to the website for the Secretary of State of California, Defendant Goli Nutrition Inc. is a California corporation. Exhibit A.

4.    These records identify Defendant's registered agent as Incorp Services Inc., 5716 Corsa Ave Suite 110, Westlake Village, California. Exhibit A.

5.    According to the website of the New York Secretary of State, Goli Nutrition Inc.is not identified as authorized to do business in New York. Exhibit B.

6.    Where "a foreign corporation [is] not authorized to do business in this state…[it] may be served upon the secretary of state as its agent." BCL § 307(a).

7.    On September 30, 2025, Plaintiff attempted "Service of such process upon the secretary of state…[by] Personally delivering to and leaving with him or his deputy, or with any

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 25 of 90 PageID #: 35

person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, a copy of such process together with the statutory fee." BCL § 307(b); Exhibit C.

8.     The process server "was unable to effect service because: The New York Secretary of State reports no record on file for said entity." Exhibit C.

9.     California Corporations Code ("CORP") provides that "In addition to the provisions of Chapter 4 (commencing with Sect. 413.10) of Title 5 of Part 2 of the Code of Civil Procedure, process may be served upon delivery by hand of a copy of any process against the corporation (a) to any natural person designated by it as agent or (b), if a corporate agent has been designated, to any person named in the latest certificate of the corporate agent filed pursuant to Section 1505 of sch corporate agent shall constitute valid service on the corporation."  CORP § 1700-1701(b).

10.     On October 8, 2025, "notice thereof and a copy of the process was delivered personally without this state to such foreign corporation by a person and in the manner authorized to serve process by law of the jurisdiction in which service is made." BCL § 307(b)(1); Exhibit D.

11.     Since "service of a copy of process was effected by personal service, proof of service shall be by affidavit of compliance with this section filed, together with the process, within thirty days after such service, on November 7, 2025, with the clerk of the court in which the action or special proceeding is pending." BCL § 307(c)(1).

12.     Finally, "Service of process shall be complete ten days after such papers are filed with the clerk of the court," on October 27, 2025. BCL § 307(c)(1).

2

I affirm this  15 October 2025  , under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

October 15, 2025
Date/Executed On

Nassau County, New York

*/s/ Spencer Sheehan*

Location

3

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 27 of 90 PageID #: 37

### Certificate of Service

I certify that on October 15, 2025, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

4

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 28 of 90 PageID #: 38

# EXHIBIT A

## California
*Secretary of State*

Business        UCC

Login

Home

Search

Forms

Help

# Business Search

*The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.*

*Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.*

**Basic Search**

*A Basic search can be performed using an entity name or entity number. When conducting a search by*

## GOLI NUTRITION INC. (4634587)



Request Certificate

| | |
|---|---|
| *Initial Filing Date* | 08/31/2020 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | DELAWARE |
| *Entity Type* | Stock Corporation - Out of State - Stock |
| *Principal Address* | 1201 ORANGE STREET, SUITE 600 WILMINGTON, DE 19801 |
| *Mailing Address* | 8430 SANTA MONICA BLVD # 204 WEST HOLLYWOOD,CA90069 |
| ⚠ *Statement of Info Due Date* | 08/31/2024 |
| *Agent* | 1505 Corporation INCORP SERVICES, INC. |
| *CA Registered Corporate (1505) Agent Authorized Employee(s)* | Steven Pickett 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Timothy Duncan 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Breanna Ruiz 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Leesah Marston 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |



View History



Request Access

Business       UCC

*search **only ACTIVE entities** (Corporations, Limited Liability Companies, Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ? starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.*

### Advanced Search

*An Advanced search is required when searching for publicly traded disclosure information or a status other than active.*

*An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.*

**Disclaimer:** *Search results are limited to the 500 entities closest matching the entered search criteria. If your desired search result is not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is*

## GOLI NUTRITION INC. (4634587)



Request Certificate

| | |
|---|---|
| *Initial Filing Date* | 08/31/2020 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | DELAWARE |
| *Entity Type* | Stock Corporation - Out of State - Stock |
| *Principal Address* | 1201 ORANGE STREET, SUITE 600 WILMINGTON, DE 19801 |
| *Mailing Address* | 8430 SANTA MONICA BLVD # 204 WEST HOLLYWOOD,CA90069 |
| *Statement of Info Due Date* | 08/31/2024 |
| *Agent* | 1505 Corporation INCORP SERVICES, INC. |
| *CA Registered Corporate (1505) Agent Authorized Employee(s)* | Steven Pickett 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Timothy Duncan 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Breanna Ruiz 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Leesah Marston 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |



View History



Request Access

Business    UCC

record.

*Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

goli nutriti 🔍

Advanced ⌄

Results: 1

| Entity Information ▾ | Initial Filing Date ▾ |
|---|---|
| GOLI NUTRITION INC. (4634587) ❯ | 08/31/2020 |

## GOLI NUTRITION INC. (4634587)



Request Certificate

| | |
|---|---|
| *Initial Filing Date* | 08/31/2020 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | DELAWARE |
| *Entity Type* | Stock Corporation - Out of State - Stock |
| *Principal Address* | 1201 ORANGE STREET, SUITE 600 WILMINGTON, DE 19801 |
| *Mailing Address* | 8430 SANTA MONICA BLVD # 204 WEST HOLLYWOOD,CA90069 |
| ⚠ *Statement of Info Due Date* | 08/31/2024 |
| *Agent* | 1505 Corporation INCORP SERVICES, INC. |
| *CA Registered Corporate (1505) Agent Authorized Employee(s)* | Steven Pickett 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Timothy Duncan 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Breanna Ruiz 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |
| | Leesah Marston 5716 CORSA AVE SUITE 110, WESTLAKE VILLAGE, CA |



View History



Request Access

Home

Search

Forms

Help

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 32 of 90 PageID #: 42

# EXHIBIT B

FILED: KINGS COUNTY CLERK 10/15/2025 02:14 PM

NYSCEF DOC. NO. 5

INDEX NO. 523551/2025

RECEIVED NYSCEF: 10/15/2025



# Department of State
## Division of Corporations

## Entity Search Results

**Currently 159 entity are displayed. If the entity name you are searching is not displayed please refine the search.**

Search



| Name | DOS ID # | Assumed Name ID # | Status | Entity Type | Date of First Filing | County |
|------|----------|-------------------|--------|-------------|---------------------|--------|
| GOLI (DELAWARE), INC. | 1544727 | | Inactive | UNAUTHORIZED FOREIGN BUSINESS CORPORATION | 05/01/1991 | Blank |
| GOLI CAB CORP. | 597567 | | Inactive | DOMESTIC BUSINESS CORPORATION | 12/26/1979 | New York |
| GOLI LLC | 4145844 | | Active | DOMESTIC LIMITED LIABILITY COMPANY | 09/23/2011 | Queens |
| GOLI REALTY CORP. | 2290203 | | Active | DOMESTIC BUSINESS CORPORATION | 08/19/1998 | Nassau |
| GOLI SHARES LLC | 3401785 | | Active | DOMESTIC LIMITED LIABILITY COMPANY | 08/17/2006 | Nassau |

Rows per page: 5 ▾     1-5 of 159    ‹  ›

Return to Search

# EXHIBIT C

ATTORNEY(S) : Sheehan & Associates, P.C.
Index # : **523551/2025**
PURCHASED/FILED : July 15, 2025
STATE OF : New York
COURT : Supreme
COUNTY/DISTRICT : Kings

# AFFIRMATION OF NON-SERVICE

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```
Michael Ring, individually and on behalf of all others
similarly situated

vs

Goli Nutrition Inc.

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

STATE OF NEW YORK    , COUNTY OF ALBANY

_____ Robert Guyette _____, being duly sworn deposes and says:
that deponent is over 18 years of age, that deponent attempted to serve:

**Goli Nutrition Inc.**
with the following documents:
SUMMONS, COMPLAINT AND NOTICE OF ELECTRONIC FILING

Service was attempted at the office of the New York Secretary of State, 99 Washington Ave., Albany, NY on 9/30/2025 and after due diligence, deponent was unable to effect service because:

The New York Secretary of State reports no record on file for said entity.

I affirm on _____ **SEPTEMBER 30, 2025** _____, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an action or proceeding in a court of law.

X _____
ROBERT GUYETTE

**Invoice·Work Order #** 2539656
Attorney File #  **Ring vs Goli Nutrition**

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 36 of 90 PageID #: 46

**NEW YORK**
STATE OF OPPORTUNITY.

**Division of Corporations,
State Records and
Uniform Commercial Code**

New York State
**Department of State**
DIVISION OF
CORPORATIONS,
STATE RECORDS AND
UNIFORM COMMERCIAL
CODE
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
www.dos.ny.gov

## Service of Process / Notice of Claim Cover Sheet (Albany Office Only)

**(1)** Name of the entity or person to be served. *(See Note 1 below:)*

### Goli Nutrition Inc.

**(2)** If serving process on a *domestic entity* or an *authorized foreign entity*, staple the DOS search page(s) (the "Current Status Information" and, if applicable, the "Filing History Information" for the entity to be served to this cover sheet. If serving a notice of claim on a public corporation that has filed a Certificate of Designation for Service of Notice of Claim, attach a copy of the first page of the filed Certificate of Designation.

**(3)** Indicate the Section of Law under which service is made. Check only one box. *(See note 2 below):*

**Domestic or Authorized Foreign Entities (Applicable fee: $40.00)**
- ☒ Business Corporation Law §306
- ☐ Not-for-Profit Corporation Law §306
- ☐ Limited Liability Company Law §303
- ☐ Partnership Law §121-109(a) (LP's)
- ☐ Partnership Law §121-1502 (must serve a deputy Secretary of State)
- ☐ Partnership Law §121-1505
- ☐ Real Property Law §339-n
- ☐ General Associations Law §19 (must serve a deputy Secretary of State)

**Notice of Claim on Public Corporations (Applicable fee: $250.00)**
- ☐ General Municipal Law §53 (Certificate of Designation Filed)
- ☐ General Municipal Law §53 (no Certificate of Designation filed)
- ☐ Executive Law §108

**Unauthorized Foreign Entities (Applicable fee: $40.00)**
- ☐ Business Corporation Law §307
- ☐ Not-for-Profit Corporation Law §307
- ☐ Limited Liability Company Law §304
- ☐ Partnership Law §121-109(b) (LP's)

**Suspended Entities (Applicable fee: $40.00)**
- ☐ Business Corporation Law §306-A (suspended BC's)
- ☐ Limited Liability Company Law §301-A (suspended LLC's)
- ☐ Partnership Law §121-104-A (suspended LP's)
- ☐ Partnership Law §121-1506 (suspended LLP's)

**Vehicle and Traffic Law (Applicable fee: $10.00)**
- ☐ Vehicle and Traffic Law §253 (non-resident)
- ☐ Vehicle and Traffic Law §254 (former-resident)

- ☐ Other: specify section of law _____ and applicable fee (☐ $40 or ☐ other $ _____

**(4)** Indicate the manner is which the applicable fee is paid:
- ☒ Drawdown Account ___Poole - 02___ ☐ Check ☐ Credit Card ☐ Debit Card ☐ Cash ☐ Other
- ☐ Exempt pursuant to Executive Law §96 (10) - process served on behalf of a political subdivision of the State

**(5)** Name and address of the Process / Notice of Claim Server:

**ALEXANDER POOLE & CO., INC • 41 STATE STREET, STE 702 • ALBANY, NY 12207**

**(6)** Staple this cover sheet (with the DOS search page(s), if serving a domestic entity or an authorized foreign entity) to the process / Notice of Claim

**(7)** (a) If serving a domestic entity or an authorized foreign entity, attach *two (2) duplicate copies* of the process.
　　(b) If serving an unauthorized foreign entity or a suspended entity, attach one (1) copy of the process.
　　*(See Note 3 below)*
　　(c) If serving a notice of claim on a public corporation, attach two (2) duplicate copies of the Notice of Claim and a copy of the first page of the filed Certificate of Designation, if applicable.

---

Note 1: If you attach DOS search page(s), and there is a conflict between the name of the entity as indicated in the space "(1)" above and the name on the attached DOS search page(s), *the name provided on the attached DOS search page(s) will control.* Additionally, if you attach DOS search page(s), and space "(1)" above is left bank, *the entity named in the attached DOS search page(s) will be served.*

Note 2: If you attach DOS search page(s), and there is a conflict between the section of law indicated in space "(3)" above and the section of law applicable to the type of entity described in the attached DOS search page(s), *the section of law applicable to the entity will control.*

Note 3: If you are serving an unauthorized foreign entity or a suspended entity, or if you are serving under the Vehicle and Traffic Law, you, or the person on whose behalf service is being made, may also be required to mail notice of service and a copy of the process to the entity or person being served. *The Department of State does not make any such mailing.* See the applicable section of law for further information.

---

**FOR DOS USE ONLY**

Served on _____ Date: _____

Service of Process Unit Search Results ☐ Records Located ☒ No Records Located ☐ Entity Name has changed ☐ Entity has Merged Out of Existence
☐ Other _____

**Rejections:** ☐ Copies of Process/Notice of Claim are not duplicates ☐ 2 Copies of Process/Notice of Claim are Required ☐ Court/Forum not within NYS
☐ Payment not Received ☐ Manner of Payment was not Indicated ☐ Document not within statutory definition of "Process"
☐ Entity has Merged Out of Existence ☐ Secretary oif State is not designated as agent for Service of Process
☐ Other _____

Rejection: _____ Rejected by: _____

DOS-0277-f (Rev.04/23)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　2539656

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 37 of 90 PageID #: 47

# NEW YORK SUPREME COURT
# KINGS COUNTY

| | |
|---|---|
| MICHAEL RING, individually and on behalf of all others similarly situated, | **SUMMONS** |
| Plaintiff, | Index No. Purchased on    July 15, 2025 |
| -against- | |
| GOLI NUTRITION INC., | |
| Defendant. | |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

July 15, 2025

/s/Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Plaintiff Ring designates Kings County as place of trial. The basis of venue is:

☒ Plaintiff Ring's residence, 78 8th Ave, Brooklyn, NY 11215

☐ Where a substantial part of the events or omissions giving rise to the claim occurred

☐ Other

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 38 of 90 PageID #: 48

# NEW YORK SUPREME COURT
# KINGS COUNTY

MICHAEL RING, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

GOLI NUTRITION INC.,

Defendant.

Index No.

Class Action Complaint

Jury Trial Demanded

Michael Ring ("Plaintiff") through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.  Until the late nineteenth century, Americans filled their own bottles and sacks, in bulk, at the local dry goods and general store.

2.  The frauds encountered related primarily to weights and measures, such as whether a scale was zeroed out, or if the cashier kept his "thumb on the scale."

3.  Increasing urbanization, new technologies, and societal changes, resulted in "Packages replacing the salesman."

4.  When pitted against unscrupulous and distant canners and packers, skilled in exploiting "extrinsic cues such as visual information,"[1] the consumer was

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016):

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 39 of 90 PageID #: 49

no match.

5.     Research in marketing and psychology confirmed almost ninety percent of the public considered a container's size a key factor in making their decisions.

6.     The result was oversized and misshaped containers, filled with air, and smaller quantities of the feed, corn, and oats, than expected.

7.     The Department of Weights and Measures then required commodities to disclose "the quantity of the contents," in term of weight, measure, or count.

8.     This was little use, because the hurried consumer, lacking literacy, was unaware of the specific gravity, density, and/or potency, of what they were buying.

9.     Later, the Legislature required "Fair Packaging and Labeling of Containers," to prevent "false indication of or respecting the number, quantity, weight or measure" of consumer commodities. AGM §§ 193, 194, and 1 N.Y.C.R.R. § 259.1(a).[2]

---

219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); Gupta K, O. et al., Package Downsizing: Is it Ethical? 21 AI & Society 239-250 (2007).

[2] Article 16, Weights and Measures, AGM § 176 *et seq*., Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 *et seq*.; 1

2

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 40 of 90 PageID #: 50

10.   To appeal to consumers seeking melatonin, and/or a desire for value, by obtaining more of something, not less, Goli Nutrition Inc. ("Defendant") manufactures, labels, markets, packages, and/or distributes "Dreamy Sleep Gummies," having "5mg Melatonin per serving," in bottles of "60 Gummies," under the Goli brand ("Product").



---

N.Y.C.R.R. Part 221 ("Commodities"); Title 1, Department of Agriculture and Markets, Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), including 1 N.Y.C.R.R. § 259.1(a).

11.     Despite expecting each of the sixty gummies would deliver the promised "5mg Melatonin per serving," the Product is "misbranded,"[3] because the small print "Supplement Facts," on a non-visible side of the bottle, shows the "Serving Size [is] 2 Gummies," confirmed by the "Suggested Use," to "Take "Take 2 gummies at bedtime," which means the "Servings Per Container [is only] 30," not 60.



12.     The result of this "false indication of or respecting the number, quantity,

_____

[3] "Misbranded" is the statutory term for labeling that is false and/or misleading. "Adulterated" is the statutory term meaning to "render (something) poorer in quality by adding another substance, typically an inferior one."

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 42 of 90 PageID #: 52

weight or measure" is that purchasers receive one-half of the melatonin they expect.

13. This practice was recently observed by Edgar Dworsky, aka "MrConsumer."

14. As part of his efforts "to help educate the public about the catches or 'gotchas' in disclaimers," he warned his readers, "Don't Let the Pill Bottle Quantity Fool You."[4]



## Don't Let the Pill Bottle Quantity Fool You

January 15, 2024 by Edgar (aka MrConsumer)

15. Like many and/or most purchasers, "When [they] see the number of pills [or gummies] in a bottle, along with the strength, [they] reasonably assume that is what will be inside. So [for example,] a bottle of 100 aspirin that says 325 milligrams should be just that."

16. The Product is "misbranded," because despite the front label "declaration of [its] net quantity of contents…expressed in the terms of [] numerical count," "60 Gummies," this fails to "give accurate information regarding [its] net quantity of contents," because instead of sixty servings per container, each having 5 mg of melatonin, purchasers get one-half of this quantity, thirty. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1);.

---

[4] Edgar (aka MrConsumer), Don't Let the Pill Bottle Quantity Fool You, Jan. 15, 2024, MousePrint.org.

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 43 of 90 PageID #: 53

17.   As Mr. Consumer said, "Shouldn't the strength of the medication displayed on the front of the bottle be what you get in each pill, capsule, or gummy inside?"

18.   This was why Dworsky, and his many readers, found it insufficient to merely "add the words 'per serving' in small print," to the front label, like here.

Before                     After



19.   Dworsky knew that "per serving" would not "put prospective purchasers on sufficient notice that you needed to take [multiple gummies] to get the stated amount of [the promised vitamins or supplement]."

20.   Promoting "5mg Melatonin per serving," and/or "60 Gummies," "[impedes] value comparisons by consumers," who will not expect (i) the "Serving

6

Size [is] 2 Gummies" and/or (ii) the need to take two gummies to get this much melatonin. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1).

21.    Since "the declaration of quantity of contents by numerical count," "60 Gummies," does not give adequate information as to the true quantity, in terms of the total amount of melatonin, the front label was required to combine this with other information, such as disclosures (1) that two gummies were needed to deliver 5 mg of melatonin, and/or (2) the container provided thirty servings. 1 N.Y.C.R.R. § 221.5(g).

22.    Since the servings per container of 30 is not the same as the "net quantity of contents," "60 Gummies," it is required to be accompanied by, for example, "Serving Size 2 Gummies," "30-day supply," and/or "Take 2 Gummies." 1 N.Y.C.R.R. § 221.5(g).

23.    As the front label "bears a representation as to the number of servings" even without the specific word, "servings," through the statements, "5mg Melatonin per serving," and "60 Gummies," conveying consumers will get sixty servings, each with five milligrams of melatonin, it was required to, and/or should have, disclosed, "in immediate conjunction therewith…a statement of the net quantity (in terms of [] numerical count) of each such serving," i.e., "2 Gummies Per Serving," and/or "Take 2 Gummies," to prevent them from being misled. 1 N.Y.C.R.R. § 221.5(g).

24.    The Product is "misbranded," because labeling from competitors shows

7

that statements, such as "5 mg Melatonin per serving," and "60 Gummies," are not

consistent with "general consumer usage and trade custom with respect to the terms

used in expressing a declaration of quantity of [gummy vitamins]." AGM § 201(1),

and 1 N.Y.C.R.R. § 221.5(f).

25.   This is confirmed by how competitor brands of supplements, like GNC,

inform purchasers of how much melatonin they are really getting, by disclosing on

the front label, the quantity of the nutrient, "5 mg," which is "Per 2 Gummies," and

that the "120 Gummies" in the container are a "60-Day Supply."



26.   Other melatonin supplements, from Nature Made, prominently inform

purchasers that their gummies provide "10 mg per 2 gummies," in containers of "70

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 46 of 90 PageID #: 56

Gummies," which provides "40 Servings," equivalent to disclosing three gummies are equal to one serving.



27.   The Product is "misbranded" because even if statements, such as "5 mg per serving," and "60 Gummies," may be consistent with any "general consumer usage and trade custom with respect to the terms used in expressing a declaration of quantity of [gummies]," this does not give accurate and adequate information as to the true quantity, and/or amount, of the gummies, and/or the quantity of melatonin. AGM § 201(1), and 1 N.Y.C.R.R. § 221.5(f)

9

Case 1:25-cv-06247   Document 1-2   Filed 11/10/25   Page 47 of 90 PageID #: 57

28.   This is why the Department of Agriculture and Markets ("Ag&Mkts") considers it "deceptive" to not include the quantity per serving, because there is a label representation as to the quantity of melatonin, through "5 mg per serving," and "60 Gummies," even though this is not explicit, but implied. 1 N.Y.C.R.R. § 221.5.

29.   The Product is "misbranded," because even though the front label contains "an accurate statement of the quantity of the contents in terms of…numerical count," "60 Gummies," this is not "fully informative," because it does not give adequate information as to the true quantity, or "measure," requiring a disclosure that two gummies are needed to deliver  the five milligrams of melatonin. AGM § 193, and 1 N.Y.C.R.R. § 221.5(g) (requiring "Combination declaration," including count, weight, measure, and/or size, unless a declaration of one of these alone "is fully informative.")

30.   The Product is "misbranded," because even though "Serving Size 2 Gummies" and/or "Take 2 gummies," were required on the front label, this only is disclosed in the fine print, on a non-visible side, "not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." AGM § 201(6).

31.   As a result of the false and misleading representations and/or omissions,

10

INDEX NO. 523551/2025
RECEIVED NYSCEF: 10/15/2025
Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 48 of 90 PageID #: 58

the Product is sold at a premium price, approximately $14.99.

32.   This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

33.   This will, and/or can be, determined through methods including conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic pricing, regression, and/or other similar methods, which evaluate a product's attributes, and/or features.

34.   By determining consumers' willingness to pay for products, with and/or without the challenged claims, attributes, representations, and/or omissions, the value of the challenged claims, representations, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

35.   Plaintiff Ring is a citizen of New York.

36.   Plaintiff Ring is a resident of Kings County, New York.

37.   The Court has jurisdiction over Defendant, because it transacts business within New York, and sells the Product to consumers within New York, through stores, in this State, to citizens of this State.

## VENUE

38.   Venue is in this Court, because Plaintiff Ring's residence is in Kings County.

11

## PARTIES

39.   Plaintiff Ring is a consumer, not a merchant or re-seller.

40.   Plaintiff Ring is a citizen of New York.

41.   Plaintiff Ring is a resident of Kings County, New York.

42.   Defendant Goli Nutrition Inc. is a Delaware corporation, with a principal place of business in California.

43.   Plaintiff is like many or most consumers, and prefers to get more of most things, i.e., gummies, melatonin, etc., than less, for their money.

44.   Plaintiff is like many or most consumers, and looks to, and/or cannot avoid viewing, the front label of consumer commodities and/or nutritional products, to see what they are buying, and/or to learn basic information about them, such as how much it contains, how long it will last at the recommended dosage, and/or what it contains, with respect to the substance they are purchasing.

45.   Plaintiff is like many or most consumers of supplements, and/or vitamins, and thinks in terms of how many pieces, chewables, soft chews, chewable tablets, capsules, gummies, bites, etc., are needed, to deliver the promised amount, of whatever is promoted on the front label.

46.   Plaintiff is like most or many consumers, and is accustomed to the front label of packaging telling him how much a product contains, in terms that would be clearly understood.

12

47. Plaintiff expected that because the Product's front label promoted a certain number of gummies, sixty, and/or promised a specific amount or quantity of a substance, five milligrams of melatonin, per serving, this meant each of the gummies would deliver the identified quantity and/or amount, of that substance.

48. Plaintiff read, was exposed to, relied on, and/or was caused to pay more money as a result of, the representations and/or omissions, including, "5 mg Melatonin per serving," and/or "60 Gummies" to mean each of the gummies would deliver five milligrams of melatonin.

49. Plaintiff bought the Product, with the labeling and packaging identified here, at or around the above-referenced price.

50. Plaintiff purchased the Product, between August 2022 and June 2025, at stores, in New York.

51. Plaintiff paid more for the Product than he would have, had he known (i) it required more than one gummy to obtain the 5 mg of melatonin, promised on the front label, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings, as he would have paid less.

52. The Product was not "worthless" to Plaintiff, but worth less, than what Plaintiff paid, and he would not have paid as much, absent Defendant's false and misleading statements, and/or omissions.

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 51 of 90 PageID #: 61

53. Plaintiff obtained value from the Product, because it was a source of melatonin, but seeks the cost difference between the Product, as presented, and as delivered.

54. The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based conjoint analysis, choice-based ranking, hedonic pricing, or other similar methods, impacted Plaintiff's purchasing choice, compared to similar products lacking its features and/or attributes.

## CLASS ALLEGATIONS

55. Plaintiff is a consumer, not a re-seller or merchant.

56. Plaintiff seeks to represent other consumers, in the class identified below, against a big business:

> Only citizens of New York, who purchased the Product, for personal consumption and/or use, in New York, during the statutes of limitations.

57. Plaintiff's claims are based upon New York's General Business Law ("GBL") §§ 349 and 350, passed by the legislature, to protect the New York public, and unsophisticated New York consumers, against large and sophisticated businesses.

58. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii)

14

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 52 of 90 PageID #: 62

governmental entities, (iii) the Court, the Court's immediate family, and Court staff,

(iv) any person that timely and properly excludes himself or herself from the Class,

(v) non-citizens of New York, (vi) persons who bought the Product outside New

York, (vii) persons who used or consumed the Product outside New York, (viii)

persons who may be citizens of more than one state, and (ix) any persons who would

otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties,

as opposed to actual damages.

59. Common questions of issues, law, and fact predominate, and include

whether Defendant's representations were, and are misleading, and if Plaintiff and

class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members,

because all were subjected to the same unfair, misleading, and/or deceptive

representations, omissions, and/or actions.

61. Plaintiff is an adequate representative, because his interests do not

conflict with other members.

62. No individual inquiry is necessary, since the focus is only on

Defendant's practices, and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive, and/or

are impractical to justify, as the claims are modest, relative to the scope of the harm.

64. The class is sufficiently numerous, because the Product is sold

15

throughout the State, with the representations, omissions, packaging, and/or labeling identified here, in this State, to citizens of this State.

65. Plaintiff does not seek any penalty as a measure of damages.

66. To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of the proposed class.

67. Plaintiff's Counsel is competent and experienced in consumer class actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

68. To the extent required, this section incorporates by reference other paragraphs, as necessary.

69. The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

70. This includes making New York's consumer protection and enforcement consistent with established policies of other jurisdictions relating to consumer protection.

71. The GBL considers false advertising, unfair acts, and deceptive practices, in the sale of consumer goods, to be unlawful.

72. Violations of the GBL can be based on (1) other laws and standards

16

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 54 of 90 PageID #: 64

related or connected to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception in other jurisdictions, and/or (6) standards of unfairness and deception set forth and interpreted by other agencies, political organizations, entities, tribunals, and/or bodies, relating to regulatory provisions.

73. Defendant's false and deceptive representations and omissions, with respect to the Product's contents, origins, nutrient values, servings, ingredients, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

74. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, which was unfair and/or deceptive to consumers.

75. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against the public.

76. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including,

"5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, contrary to statutes and/or regulations, which prohibit consumer deception by companies in the labeling of commodities and/or nutritional products.

77. Plaintiff paid more for the Product, and would not have paid as much, if he knew (i) it required more than one gummy to obtain the 5 mg of melatonin, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings.

78. Plaintiff seeks to recover for economic injury and/or loss he sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

79. Plaintiff may produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-based ranking, and/or other advanced methodologies.

80. This means individual damages will be based on the value attributed to the challenged claims, practices, and/or omissions, a percentage of the total price paid, instead of the Product's total price.

18

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 56 of 90 PageID #: 66

81.   This is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

82.   This difference is typically between five ($0.05) and sixty cents ($0.60) per unit, a small fraction or percentage of the total price.

83.   Plaintiff was caused to pay more than he would have paid for the Product, based on the identified misrepresentations and/or omissions.

84.   Plaintiff suffered benefit of the bargain damages.

85.   Plaintiff paid for sixty servings of melatonin, each with five milligrams of melatonin, but received half of this amount.

86.   As a result of Defendant's misrepresentations and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks:

1.  To declare this a proper class action, certifying Plaintiff as representative, and the undersigned as Counsel for the Class; and

2.  Actual damages, but neither (1) a penalty, nor minimum measure of recovery

19

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 57 of 90 PageID #: 67

created or imposed by statute, which may be prohibited, (2) full value damages, nor (3) punitive damages.

July 15, 2025

Respectfully submitted,

/s/  Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

Notice of Lead Counsel Designation

Lead Counsel for Plaintiff

Spencer Sheehan

Sheehan & Associates P.C.

Counsel for Plaintiff

20

Case 1:25-cv-06247   Document 1-2   Filed 11/10/25   Page 58 of 90 PageID #: 68

## Certificate of Service

I certify, that on July 15, 2025, I served and/or transmitted the foregoing, by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic | Email | First-Class Mail | Fax |
|---|---|---|---|---|
| Defendant | ☐ | ☐ | ☐ | ☐ |
| Plaintiff | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** KINGS

-------------------------------------------------------------------x

MICHAEL RING

                        Plaintiff/Petitioner,

            - against -                          Index No. 523551/2025

GOLI NUTRITION INC.,

                         Defendant/Respondent.

-------------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
### (Mandatory Commencement Case)
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi)**)**

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

  The **benefits of participating in e-filing** include:

  - serving and filing your documents electronically

  - free access to view and print your e-filed documents

  - limiting your number of trips to the courthouse

  - paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Case 1:25-cv-06247     Document 1-2     Filed 11/10/25     Page 60 of 90 PageID #: 70

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated:   September 23, 2025

60 Cuttermill Rd, Ste 412
Great Neck NY 11021

Spencer Sheehan

Name                                          Address

Sheehan & Associates, P.C.

Firm Name

(516) 268-7080

Phone

spencer@spencersheehan.com
E-Mail

To:   GOLI NUTRITION INC.,

c/o _____

_____

6/6/18

Index  # 523551/2025                Page 2 of 2                EFM-1A

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 61 of 90 PageID #: 71

# EXHIBIT D

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF KINGS, CIVIL TERM

| | |
|---|---|
| **MICHAEL RING, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED** | Hearing Date: |
| Plaintiff/Petitioner | INDEX NO:    **523551/2025** |
| vs. | Index Date:    **07/15/2025** |
| **GOLI NUTRITION INC.** | AMENDED AFFIRMATION OF SERVICE OF: |
| Defendant/Respondent | **SUMMONS; COMPLAINT; NOTICE OF ELECTRONIC FILING; AFFIRMATION OF NON-SERVICE** |

Received by **Artur Hakobjanyan**, on the **8th day of October, 2025 at 9:58 PM** to be served upon **Goli Nutrition Inc. c/o INCORP Services, Inc., REGISTERED AGENT at 5716 Corsa Ave Ste 110, Westlake Village, Ventura County, CA 91362-7354**.

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness herein.

On the **9th day of October, 2025 at 11:43 AM** at the address of **5716 Corsa Ave Ste 110, Westlake Village, Ventura County, CA 91362-7354**,  this affiant served the **SUMMONS; COMPLAINT; NOTICE OF ELECTRONIC FILING; AFFIRMATION OF NON-SERVICE** upon **Goli Nutrition Inc. c/o INCORP Services, Inc., REGISTERED AGENT** in the manner described below:

**CORPORATE SERVICE**, by personally delivering **1** true and correct copy(ies) of the **SUMMONS; COMPLAINT; NOTICE OF ELECTRONIC FILING; AFFIRMATION OF NON-SERVICE**, with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS: "**John Doe**", **Person Authorized to Accept Service, I delivered the documents to "John Doe" who identified themselves as the person authorized to accept. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'8"-5'10" tall and weighing 200-240 lbs with a beard.**

**The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.**

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on _____10.14.2025_____.

_____

**Artur Hakobjanyan, Reg. # 2024235808, Los Angeles, California, CA**
ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

FILED: KINGS COUNTY CLERK 10/15/2025 02:14 PM INDEX NO. 523551/2025
NYSCEF DOC. NO. 7 RECEIVED NYSCEF: 10/15/2025

Case New York State United Court System 10/15/25    Page 63 of 90 PageID #: 73



# Additional Notice of Lawsuit

| | |
|---|---|
| Name of Court: | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF KINGS, |
| County: | KINGS |
| Street Address: | 360 Adams Street |
| City, State, Zip Code: | Brooklyn, New York 11201 |

| | |
|---|---|
| Name of Defendant: | GOLI NUTRITION INC. |
| Defendant Address: | 5716 Corsa Ave Ste 110, Westlake Village, CA 91362-7354 |

| | |
|---|---|
| Plaintiff: | MICHAEL RING, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS |
| Defendant: | GOLI NUTRITION INC. |
| Original Creditor: | |
| Index Number: | 523551/2025 |

**Attention:** a lawsuit has been filed against you claiming that you owe money for an unpaid consumer debt.

You may wish to contact an attorney.

You should respond to the lawsuit as soon as possible by filing an "answer" which may be done at the court clerk's office listed above.

If you do not respond to the lawsuit, the court may enter a money judgment against you.  Once entered, a judgment is good and can be used against you for twenty years, and your personal property and money, including a portion of your paycheck and/or bank account, may be taken from you.  Also, a judgment may affect your credit score and can affect your ability to rent a home, find a job, or take out a loan.

You CANNOT be arrested or sent to jail for owing a debt.

Additional information can be found at the New York State Court System website.

**Sources of information and assitance:**

The court encourages you to inform yourself about your options as a defendant in this lawsuit.  In addition to seeking assistance from a private attorney or legal aid office, there are free legal assistance computer programs that you can use online to help you represent yourself in this lawsuit.

For further information, or to locate a legal aid program near you, you may visit the LawHelpNY website or the New York State Court System website, which has information for representing yourself and links to other resources at:

https://www.nycourts.gov/courthelp/MoneyProblems/whenYouOwe.shtml.

---



**ADA Accommodations**
ada@nycourts.gov



**Spoken or Sign Language**
interpreter@nycourts.gov

**COURT Help**

**1-800-COURT-NY**
**(268-7869)**



# Notificación Adicional de Demanda

| | |
|---|---|
| Tribunal: | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY |
| Condado: | KINGS |
| Dirección: | 360 Adams Street |
| Ciudad, estado, Código postal: | Brooklyn, New York 11201 |
| | |
| Nombre de la parte demandada: | GOLI NUTRITION INC. |
| Dirección: | 5716 Corsa Ave Ste 110, Westlake Village, CA 91362-7354 |
| | |
| Parte Demandante: | MICHAEL RING, INDIVIDUALLY AND ON BEHALF OF ALL |
| Parte Demandada: | GOLI NUTRITION INC. |
| Acreedor Original: | |
| Número de causa: | 523551/2025 |

**Atención:** Se ha entablado una demanda en su contra reclamándole una deuda de consumo.

Si quiere,consulte con un abogado.

Conteste a la demanda lo antes posible al entablar una "contestación" en la secretaría del tribunal arriba mencionado.

El tribunal podría emitir un fallo monetario en su contra si no contesta la demanda.  Una vez que se emita el fallo, este tendrá validez y podría usarse en su contra por 20 años y le podrían quitar sus bienes personales y dinero, incluso una porción de su sueldo y/o cuenta bancaria.  También, un fallo monetario podría afectarle su puntuación crediticia y podría impactar su capacidad para alquilar una vivienda, conseguir empleo, o solicitar un préstamo.

NO se le arrestará ni encarcelará por deudas.

Para más información visite la página web del Sistema de los Tribunales del estado de Nueva York.

**Fuentes de información y ayuda:**

El tribunal le anima a informarse acerca de las opciones disponible como persona demandada. Además de buscar ayuda con abogados privados o la oficina de ayuda legal, sepa que existen programas de computadora de asesoría legal,en línea,a su disposición si se representará por derecho propio en esta demanda.

Para más información, o para localizar un programa de asesoría legal cercano a usted, visite la página web LawHelpNY o la página web del Sistema de los Tribunales del estado de Nueva York que ofrece información y enlaces para recursos de representación por derecho propio https://www.nycourts.gov/courthelp/MoneyProblems/whenYouOwe.shtml.

| | | |
|---|---|---|
| **ADA Accommodations** ada@nycourts.gov | **Spoken or Sign Language** interpreter@nycourts.gov |  **1-800-COURT-NY** **(268-7869)** |

ATTORNEY(S) : Sheehan & Associates, P.C.
Index # : **523551/2025**
PURCHASED/FILED : July 15, 2025
STATE OF : New York
COURT : Supreme
COUNTY/DISTRICT : Kings

## AFFIRMATION OF NON-SERVICE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael Ring, individually and on behalf of all others
similarly situated

vs

Goli Nutrition Inc.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NEW YORK    , COUNTY OF ALBANY

_____ Robert Guyette _____, being duly sworn deposes and says:
that deponent is over 18 years of age, that deponent attempted to serve:

**Goli Nutrition Inc.**
with the following documents:
SUMMONS, COMPLAINT AND NOTICE OF ELECTRONIC FILING

Service was attempted at the office of the New York Secretary of State, 99 Washington Ave., Albany,
NY on 9/30/2025 and after due diligence, deponent was unable to effect service because:

The New York Secretary of State reports no record on file for said entity.

I affirm on _____ **SEPTEMBER 30, 2025** _____, under penalties of perjury under the laws of New York, which may
include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an
action or proceeding in a court of law.

X_____

ROBERT GUYETTE

**Invoice·Work Order #** 2539656
Attorney File #  **Ring vs Goli Nutrition**

INDEX NO. 523551/2025

**NEW YORK STATE OF OPPORTUNITY.**

**Division of Corporations, State Records and Uniform Commercial Code**

New York State
Department of State
DIVISION OF
CORPORATIONS,
STATE RECORDS AND
UNIFORM COMMERCIAL
CODE
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
www.dos.ny.gov

FOR DOS USE ONLY

## Service of Process / Notice of Claim Cover Sheet (Albany Office Only)

(1) **Name of the entity or person to be served.** *(See Note 1 below:)*

**Goli Nutrition Inc.**

(2) **If serving process on a** *domestic entity* **or an** *authorized foreign entity,* **staple the DOS search page(s) (the "Current Status Information" and, if applicable, the "Filing History Information" for the entity to be served to this cover sheet. If serving a notice of claim on a public corporation that has filed a Certificate of Designation for Service of Notice of Claim, attach a copy of the first page of the filed Certificate of Designation.**

(3) **Indicate the Section of Law under which service is made. Check only one box.** *(See note 2 below):*

Domestic or Authorized Foreign Entities (Applicable fee: $40.00)
- ☒ Business Corporation Law §306
- ☐ Not-for-Profit Corporation Law §306
- ☐ Limited Liability Company Law §303
- ☐ Partnership Law §121-109(a) (LP's)
- ☐ Partnership Law §121-1502 (must serve a deputy Secretary of State)
- ☐ Partnership Law §121-1505
- ☐ Real Property Law §339-n
- ☐ General Associations Law §19 (must serve a deputy Secretary of State)

Notice of Claim on Public Corporations (Applicable fee: $250.00)
- ☐ General Municipal Law §53 (Certificate of Designation Filed)
- ☐ General Municipal Law §53 (no Certificate of Designation filed)
- ☐ Executive Law §108

Unauthorized Foreign Entities (Applicable fee: $40.00)
- ☐ Business Corporation Law §307
- ☐ Not-for-Profit Corporation Law §307
- ☐ Limited Liability Company Law §304
- ☐ Partnership Law §121-109(b) (LP's)

Suspended Entities (Applicable fee: $40.00)
- ☐ Business Corporation Law §306-A (suspended BC's)
- ☐ Limited Liability Company Law §301-A (suspended LLC's)
- ☐ Partnership Law §121-104-A (suspended LP's)
- ☐ Partnership Law §121-1506 (suspended LLP's)

Vehicle and Traffic Law (Applicable fee: $10.00)
- ☐ Vehicle and Traffic Law §253 (non-resident)
- ☐ Vehicle and Traffic Law §254 (former-resident)

- ☐ Other: specify section of law _____ and applicable fee (☐ $40 or ☐ other $ _____

(4) **Indicate the manner is which the applicable fee is paid:**
- ☒ Drawdown Account ___Poole - 02___ ☐ Check ☐ Credit Card ☐ Debit Card ☐ Cash ☐ Other
- ☐ Exempt pursuant to Executive Law §96 (10) - process served on behalf of a political subdivision of the State

(5) **Name and address of the Process / Notice of Claim Server:**
**ALEXANDER POOLE & CO., INC • 41 STATE STREET, STE 702 • ALBANY, NY 12207**

(6) Staple this cover sheet (with the DOS search page(s), if serving a domestic entity or an authorized foreign entity) to the process / Notice of Claim

(7) (a) **If serving a domestic entity or an authorized foreign entity, attach** *two (2) duplicate copies* **of the process.**
(b) **If serving an unauthorized foreign entity or a suspended entity, attach one (1) copy of the process.**
*(See Note 3 below)*
(c) **If serving a notice of claim on a public corporation, attach two (2) duplicate copies of the Notice of Claim and a copy of the first page of the filed Certificate of Designation, if applicable.**

Note 1: If you attach DOS search page(s), and there is a conflict between the name of the entity as indicated in the space "(1)" above and the name on the attached DOS search page(s), *the name provided on the attached DOS search page(s) will control.* Additionally, if you attach DOS search page(s), and space "(1)" above is left bank, *the entity named in the attached DOS search page(s) will be served.*

Note 2: If you attach DOS search page(s), and there is a conflict between the section of law indicated in space "(3)" above and the section of law applicable to the type of entity described in the attached DOS search page(s), *the section of law applicable to the entity will control.*

Note 3: If you are serving an unauthorized foreign entity or a suspended entity, or if you are serving under the Vehicle and Traffic Law, you, or the person on whose behalf service is being made, may also be required to mail notice of service and a copy of the process to the entity or person being served. *The Department of State does not make any such mailing.* See the applicable section of law for further information.

---

**FOR DOS USE ONLY**

Served on _____ Date: _____

Service of Process Unit Search Results ☐ Records Located ☒ No Records Located ☐ Entity Name has changed ☐ Entity has Merged Out of Existence
☐ Other _____

Rejections: ☐ Copies of Process/Notice of Claim are not duplicates ☐ 2 Copies of Process/Notice of Claim are Required ☐ Court/Forum not within NYS
☐ Payment not Received ☐ Manner of Payment was not Indicated ☐ Document not within statutory definition of "Process"
☐ Entity has Merged Out of Existence ☐ Secretary oif State is not designated as agent for Service of Process
☐ Other _____

Rejection: _____ Rejected by: _____

DOS-0277-f (Rev.04/23)

2539656

Case 1:25-cv-06247   Document 1-2   Filed 11/10/25   Page 67 of 90 PageID #: 77

# NEW YORK SUPREME COURT
# KINGS COUNTY

MICHAEL RING, individually and on behalf
of all others similarly situated,

                    Plaintiff,

      -against-

GOLI NUTRITION INC.,

                Defendant.

**SUMMONS**

Index No.
Purchased on     July 15, 2025

To the above-named Defendant:

    **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

July 15, 2025

        /s/Spencer Sheehan
        Sheehan & Associates P.C.
        60 Cuttermill Rd Ste 412
        Great Neck NY 11021
        (516) 268-7080
        spencer@spencersheehan.com

Plaintiff Ring designates Kings County as place of trial. The basis of venue is:

☒    Plaintiff Ring's residence, 78 8th Ave, Brooklyn, NY 11215

☐    Where a substantial part of the events or omissions giving rise to the claim occurred

☐    Other

Case 1:25-cv-06247   Document 1-2   Filed 11/10/25   Page 68 of 90 PageID #: 78

# NEW YORK SUPREME COURT
# KINGS COUNTY

| | |
|---|---|
| MICHAEL RING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>GOLI NUTRITION INC.,<br><br>Defendant. | Index No.<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Michael Ring ("Plaintiff") through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.  Until the late nineteenth century, Americans filled their own bottles and sacks, in bulk, at the local dry goods and general store.

2.  The frauds encountered related primarily to weights and measures, such as whether a scale was zeroed out, or if the cashier kept his "thumb on the scale."

3.  Increasing urbanization, new technologies, and societal changes, resulted in "Packages replacing the salesman."

4.  When pitted against unscrupulous and distant canners and packers, skilled in exploiting "extrinsic cues such as visual information,"[1] the consumer was

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016):

no match.

5.    Research in marketing and psychology confirmed almost ninety percent of the public considered a container's size a key factor in making their decisions.

6.    The result was oversized and misshaped containers, filled with air, and smaller quantities of the feed, corn, and oats, than expected.

7.    The Department of Weights and Measures then required commodities to disclose "the quantity of the contents," in term of weight, measure, or count.

8.    This was little use, because the hurried consumer, lacking literacy, was unaware of the specific gravity, density, and/or potency, of what they were buying.

9.    Later, the Legislature required "Fair Packaging and Labeling of Containers," to prevent "false indication of or respecting the number, quantity, weight or measure" of consumer commodities. AGM §§ 193, 194, and 1 N.Y.C.R.R. § 259.1(a).[2]

---

219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); Gupta K, O. et al., Package Downsizing: Is it Ethical? 21 AI & Society 239-250 (2007).

[2] Article 16, Weights and Measures, AGM § 176 et seq., Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 et seq.; 1

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 70 of 90 PageID #: 80

10.   To appeal to consumers seeking melatonin, and/or a desire for value, by obtaining more of something, not less, Goli Nutrition Inc. ("Defendant") manufactures, labels, markets, packages, and/or distributes "Dreamy Sleep Gummies," having "5mg Melatonin per serving," in bottles of "60 Gummies," under the Goli brand ("Product").



---

N.Y.C.R.R. Part 221 ("Commodities"); Title 1, Department of Agriculture and Markets, Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), including 1 N.Y.C.R.R. § 259.1(a).

3

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 71 of 90 PageID #: 81

11.   Despite expecting each of the sixty gummies would deliver the promised "5mg Melatonin per serving," the Product is "misbranded,"[3] because the small print "Supplement Facts," on a non-visible side of the bottle, shows the "Serving Size [is] 2 Gummies," confirmed by the "Suggested Use," to "Take "Take 2 gummies at bedtime," which means the "Servings Per Container [is only] 30," not 60.



12.   The result of this "false indication of or respecting the number, quantity,

_____

[3] "Misbranded" is the statutory term for labeling that is false and/or misleading. "Adulterated" is the statutory term meaning to "render (something) poorer in quality by adding another substance, typically an inferior one."

weight or measure" is that purchasers receive one-half of the melatonin they expect.

13.    This practice was recently observed by Edgar Dworsky, aka "MrConsumer."

14.    As part of his efforts "to help educate the public about the catches or 'gotchas' in disclaimers," he warned his readers, "Don't Let the Pill Bottle Quantity Fool You."[4]

## Don't Let the Pill Bottle Quantity Fool You

January 15, 2024 by Edgar (aka MrConsumer)

15.    Like many and/or most purchasers, "When [they] see the number of pills [or gummies] in a bottle, along with the strength, [they] reasonably assume that is what will be inside. So [for example,] a bottle of 100 aspirin that says 325 milligrams should be just that."

16.    The Product is "misbranded," because despite the front label "declaration of [its] net quantity of contents…expressed in the terms of [] numerical count," "60 Gummies," this fails to "give accurate information regarding [its] net quantity of contents," because instead of sixty servings per container, each having 5 mg of melatonin, purchasers get one-half of this quantity, thirty. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1);.

---

[4] Edgar (aka MrConsumer), Don't Let the Pill Bottle Quantity Fool You, Jan. 15, 2024, MousePrint.org.

5

17.  As Mr. Consumer said, "Shouldn't the strength of the medication displayed on the front of the bottle be what you get in each pill, capsule, or gummy inside?"

18.  This was why Dworsky, and his many readers, found it insufficient to merely "add the words 'per serving' in small print," to the front label, like here.

Before                              After



19.  Dworsky knew that "per serving" would not "put prospective purchasers on sufficient notice that you needed to take [multiple gummies] to get the stated amount of [the promised vitamins or supplement]."

20.  Promoting "5mg Melatonin per serving," and/or "60 Gummies," "[impedes] value comparisons by consumers," who will not expect (i) the "Serving

6

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 74 of 90 PageID #: 84

Size [is] 2 Gummies" and/or (ii) the need to take two gummies to get this much melatonin. 1 N.Y.C.R.R. § 259.1(a), and AGM § 201(1).

21.    Since "the declaration of quantity of contents by numerical count," "60 Gummies," does not give adequate information as to the true quantity, in terms of the total amount of melatonin, the front label was required to combine this with other information, such as disclosures (1) that two gummies were needed to deliver 5 mg of melatonin, and/or (2) the container provided thirty servings. 1 N.Y.C.R.R. § 221.5(g).

22.    Since the servings per container of 30 is not the same as the "net quantity of contents," "60 Gummies," it is required to be accompanied by, for example, "Serving Size 2 Gummies," "30-day supply," and/or "Take 2 Gummies." 1 N.Y.C.R.R. § 221.5(g).

23.    As the front label "bears a representation as to the number of servings" even without the specific word, "servings," through the statements, "5mg Melatonin per serving," and "60 Gummies," conveying consumers will get sixty servings, each with five milligrams of melatonin, it was required to, and/or should have, disclosed, "in immediate conjunction therewith…a statement of the net quantity (in terms of [] numerical count) of each such serving," i.e., "2 Gummies Per Serving," and/or "Take 2 Gummies," to prevent them from being misled. 1 N.Y.C.R.R. § 221.5(g).

24.    The Product is "misbranded," because labeling from competitors shows

7

that statements, such as "5 mg Melatonin per serving," and "60 Gummies," are not

consistent with "general consumer usage and trade custom with respect to the terms

used in expressing a declaration of quantity of [gummy vitamins]." AGM § 201(1),

and 1 N.Y.C.R.R. § 221.5(f).

25.   This is confirmed by how competitor brands of supplements, like GNC,

inform purchasers of how much melatonin they are really getting, by disclosing on

the front label, the quantity of the nutrient, "5 mg," which is "Per 2 Gummies," and

that the "120 Gummies" in the container are a "60-Day Supply."



26.   Other melatonin supplements, from Nature Made, prominently inform

purchasers that their gummies provide "10 mg per 2 gummies," in containers of "70

8

Gummies," which provides "40 Servings," equivalent to disclosing three gummies are equal to one serving.



27.   The Product is "misbranded" because even if statements, such as "5 mg per serving," and "60 Gummies," may be consistent with any "general consumer usage and trade custom with respect to the terms used in expressing a declaration of quantity of [gummies]," this does not give accurate and adequate information as to the true quantity, and/or amount, of the gummies, and/or the quantity of melatonin. AGM § 201(1), and 1 N.Y.C.R.R. § 221.5(f)

9

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 77 of 90 PageID #: 87

28.  This is why the Department of Agriculture and Markets ("Ag&Mkts")
considers it "deceptive" to not include the quantity per serving, because there is a
label representation as to the quantity of melatonin, through "5 mg per serving," and
"60 Gummies," even though this is not explicit, but implied. 1 N.Y.C.R.R. § 221.5.

29.  The Product is "misbranded," because even though the front label
contains "an accurate statement of the quantity of the contents in terms
of…numerical count," "60 Gummies," this is not "fully informative," because it
does not give adequate information as to the true quantity, or "measure," requiring
a disclosure that two gummies are needed to deliver  the five milligrams of
melatonin. AGM § 193, and 1 N.Y.C.R.R. § 221.5(g) (requiring "Combination
declaration," including count, weight, measure, and/or size, unless a declaration of
one of these alone "is fully informative.")

30.  The Product is "misbranded," because even though "Serving Size 2
Gummies" and/or "Take 2 gummies," were required on the front label, this only is
disclosed in the fine print, on a non-visible side, "not prominently placed thereon
with such conspicuousness (as compared with other words, statements, designs, or
devices, in the labeling) and in such terms as to render it likely to be read and
understood by the ordinary individual under customary conditions of purchase and
use." AGM § 201(6).

31.  As a result of the false and misleading representations and/or omissions,

the Product is sold at a premium price, approximately $14.99.

32.   This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

33.   This will, and/or can be, determined through methods including conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic pricing, regression, and/or other similar methods, which evaluate a product's attributes, and/or features.

34.   By determining consumers' willingness to pay for products, with and/or without the challenged claims, attributes, representations, and/or omissions, the value of the challenged claims, representations, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

35.   Plaintiff Ring is a citizen of New York.

36.   Plaintiff Ring is a resident of Kings County, New York.

37.   The Court has jurisdiction over Defendant, because it transacts business within New York, and sells the Product to consumers within New York, through stores, in this State, to citizens of this State.

## VENUE

38.   Venue is in this Court, because Plaintiff Ring's residence is in Kings County.

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 79 of 90 PageID #: 89

## PARTIES

39. Plaintiff Ring is a consumer, not a merchant or re-seller.

40. Plaintiff Ring is a citizen of New York.

41. Plaintiff Ring is a resident of Kings County, New York.

42. Defendant Goli Nutrition Inc. is a Delaware corporation, with a principal place of business in California.

43. Plaintiff is like many or most consumers, and prefers to get more of most things, i.e., gummies, melatonin, etc., than less, for their money.

44. Plaintiff is like many or most consumers, and looks to, and/or cannot avoid viewing, the front label of consumer commodities and/or nutritional products, to see what they are buying, and/or to learn basic information about them, such as how much it contains, how long it will last at the recommended dosage, and/or what it contains, with respect to the substance they are purchasing.

45. Plaintiff is like many or most consumers of supplements, and/or vitamins, and thinks in terms of how many pieces, chewables, soft chews, chewable tablets, capsules, gummies, bites, etc., are needed, to deliver the promised amount, of whatever is promoted on the front label.

46. Plaintiff is like most or many consumers, and is accustomed to the front label of packaging telling him how much a product contains, in terms that would be clearly understood.

12

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 80 of 90 PageID #: 90

47. Plaintiff expected that because the Product's front label promoted a certain number of gummies, sixty, and/or promised a specific amount or quantity of a substance, five milligrams of melatonin, per serving, this meant each of the gummies would deliver the identified quantity and/or amount, of that substance.

48. Plaintiff read, was exposed to, relied on, and/or was caused to pay more money as a result of, the representations and/or omissions, including, "5 mg Melatonin per serving," and/or "60 Gummies" to mean each of the gummies would deliver five milligrams of melatonin.

49. Plaintiff bought the Product, with the labeling and packaging identified here, at or around the above-referenced price.

50. Plaintiff purchased the Product, between August 2022 and June 2025, at stores, in New York.

51. Plaintiff paid more for the Product than he would have, had he known (i) it required more than one gummy to obtain the 5 mg of melatonin, promised on the front label, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings, as he would have paid less.

52. The Product was not "worthless" to Plaintiff, but worth less, than what Plaintiff paid, and he would not have paid as much, absent Defendant's false and misleading statements, and/or omissions.

13

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 81 of 90 PageID #: 91

53.  Plaintiff obtained value from the Product, because it was a source of melatonin, but seeks the cost difference between the Product, as presented, and as delivered.

54.  The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based conjoint analysis, choice-based ranking, hedonic pricing, or other similar methods, impacted Plaintiff's purchasing choice, compared to similar products lacking its features and/or attributes.

## CLASS ALLEGATIONS

55.  Plaintiff is a consumer, not a re-seller or merchant.

56.  Plaintiff seeks to represent other consumers, in the class identified below, against a big business:

> Only citizens of New York, who purchased the Product, for personal consumption and/or use, in New York, during the statutes of limitations.

57.  Plaintiff's claims are based upon New York's General Business Law ("GBL") §§ 349 and 350, passed by the legislature, to protect the New York public, and unsophisticated New York consumers, against large and sophisticated businesses.

58.  Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii)

14

governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) any person that timely and properly excludes himself or herself from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used or consumed the Product outside New York, (viii) persons who may be citizens of more than one state, and (ix) any persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

59. Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and if Plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members, because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

61. Plaintiff is an adequate representative, because his interests do not conflict with other members.

62. No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

64. The class is sufficiently numerous, because the Product is sold

15

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 83 of 90 PageID #: 93

throughout the State, with the representations, omissions, packaging, and/or labeling identified here, in this State, to citizens of this State.

65.    Plaintiff does not seek any penalty as a measure of damages.

66.    To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of the proposed class.

67.    Plaintiff's Counsel is competent and experienced in consumer class actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

68.    To the extent required, this section incorporates by reference other paragraphs, as necessary.

69.    The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

70.    This includes making New York's consumer protection and enforcement consistent with established policies of other jurisdictions relating to consumer protection.

71.    The GBL considers false advertising, unfair acts, and deceptive practices, in the sale of consumer goods, to be unlawful.

72.    Violations of the GBL can be based on (1) other laws and standards

16

Case 1:25-cv-06247 Document 1-2 Filed 11/10/25 Page 84 of 90 PageID #: 94

related or connected to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception in other jurisdictions, and/or (6) standards of unfairness and deception set forth and interpreted by other agencies, political organizations, entities, tribunals, and/or bodies, relating to regulatory provisions.

73. Defendant's false and deceptive representations and omissions, with respect to the Product's contents, origins, nutrient values, servings, ingredients, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

74. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, which was unfair and/or deceptive to consumers.

75. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against the public.

76. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including,

"5 mg Melatonin per serving," and/or "60 Gummies," caused purchasers to expect each of the gummies would deliver five mg of melatonin, contrary to statutes and/or regulations, which prohibit consumer deception by companies in the labeling of commodities and/or nutritional products.

77.    Plaintiff paid more for the Product, and would not have paid as much, if he knew (i) it required more than one gummy to obtain the 5 mg of melatonin, and/or (ii) the number of servings in the container were required to be divided by the number of gummies per serving, two, which meant it contained one-half as many, or thirty servings.

78.    Plaintiff seeks to recover for economic injury and/or loss he sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

79.    Plaintiff may produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-based ranking, and/or other advanced methodologies.

80.    This means individual damages will be based on the value attributed to the challenged claims, practices, and/or omissions, a percentage of the total price paid, instead of the Product's total price.

18

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 86 of 90 PageID #: 96

81.    This is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

82.    This difference is typically between five ($0.05) and sixty cents ($0.60) per unit, a small fraction or percentage of the total price.

83.    Plaintiff was caused to pay more than he would have paid for the Product, based on the identified misrepresentations and/or omissions.

84.    Plaintiff suffered benefit of the bargain damages.

85.    Plaintiff paid for sixty servings of melatonin, each with five milligrams of melatonin, but received half of this amount.

86.    As a result of Defendant's misrepresentations and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks:

1.  To declare this a proper class action, certifying Plaintiff as representative, and the undersigned as Counsel for the Class; and

2.  Actual damages, but neither (1) a penalty, nor minimum measure of recovery

Case 1:25-cv-06247   Document 1-2   Filed 11/10/25   Page 87 of 90 PageID #: 97

created or imposed by statute, which may be prohibited, (2) full value damages, nor (3) punitive damages.

July 15, 2025

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

Notice of Lead Counsel Designation

Lead Counsel for Plaintiff

Spencer Sheehan

Sheehan & Associates P.C.

Counsel for Plaintiff

20

## Certificate of Service

I certify, that on July 15, 2025, I served and/or transmitted the foregoing, by the

method below to the persons or entities indicated, at their last known address of

record (blank where not applicable).

|  | Electronic | Email | First-Class Mail | Fax |
|---|---|---|---|---|
| Defendant | ☐ | ☐ | ☐ | ☐ |
| Plaintiff | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 89 of 90 PageID #: 99

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** KINGS

-----------------------------------------------------------------x

MICHAEL RING

                    Plaintiff/Petitioner,

         - against -                    Index No.  523551/2025

GOLI NUTRITION INC.,

                    Defendant/Respondent.

-----------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
**(Mandatory Commencement Case)**
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi)**)**

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

  The **benefits of participating in e-filing** include:

  - serving and filing your documents electronically

  - free access to view and print your e-filed documents

  - limiting your number of trips to the courthouse

  - paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit:  https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Case 1:25-cv-06247    Document 1-2    Filed 11/10/25    Page 90 of 90 PageID #: 100

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at   www.nycourts.gov/efile   or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated:    September 23, 2025

                                        60 Cuttermill Rd, Ste 412
                                        Great Neck NY 11021

    Spencer Sheehan

        Name                                    Address

    Sheehan & Associates, P.C.

        Firm Name

                                            (516) 268-7080

                                                Phone

                                        spencer@spencersheehan.com
                                                E-Mail

To:    GOLI NUTRITION INC.,

  c/o  _____

       _____

                                                            6/6/18